UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INSURANCE COMPANY OF THE WEST,<br><br>        Plaintiff,<br><br>    vs.<br><br>RISK PLACEMENT SERVICES, INC. OF LEXINGTON, as Successor in Interest to Equity Insurance Managers, Inc.,<br><br>        Defendant.<br>_____<br><br>AND RELATED CROSS-COMPLAINT. | CASE NO. 05cv324 DMS (CAB)<br><br>**ORDER GRANTING CROSS-DEFENDANTS' MOTIONS TO DISMISS FOURTH AMENDED CROSS COMPLAINT WITH PREJUDICE**<br><br>**[Docket Nos. 127, 128, 130]** |

This matter comes before the Court on motions by three Cross-Defendants – ZC Sterling Insurance Agency, Inc. ("Sterling"), Ocwen Loan Servicing LLC ("Ocwen"), and Washington Mutual Insurance Services ("WaMu") – to dismiss the Fourth Amended Cross-Complaint by Defendant Risk Placement Services, Inc. of Lexington ("RPS"). The Court found the motions suitable for decision without oral argument. Local Civil Rule 7.1(d)(1). For the reasons discussed below, the Court grants the motions to dismiss with prejudice.

### Background

Because these are motions to dismiss for failure to state a claim for relief, the Court accepts the facts alleged in the pleadings as true. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336,

338 (9th Cir. 1996). Plaintiff Insurance Company of the West ("ICW"), and its subsidiary, The Explorer Insurance Company, sell home and fire insurance policies to homeowners. First Amended Complaint ("FAC") ¶¶ 3-5. In January 1998, and as modified in November 2002, ICW entered into a General Agency Agreement with Insurance Ventures, Inc. to produce home insurance policies. *Id.* ¶¶ 5-6. Insurance Ventures' contractual duties included marketing, underwriting, administration, and management of sales to California homeowners (for example, accepting applications for insurance from insurance brokers and insurance agents, collecting premiums and keeping records, remitting premiums to ICW). *Id.* ¶¶ 8-11.

In turn, Insurance Ventures subcontracted certain services, including customer service and accounting, to Defendant RPS (the successor to Equity Insurance Managers, Inc., and formerly known as Equity Insurance Administrators or "EIA"). *Id.* ¶¶ 3.2, 12-15. RPS became a third party administrator for the Explorer Program to sell homeowners insurance in California for the benefit of both ICW and Insurance Ventures. *Id.* ¶¶ 12-13 (Insurance Administration Services Agreement expressly recognized duty to "properly interface with Insurance Ventures and ICW to meet the respective needs of both parties").

Plaintiff's FAC alleges contract and tort claims against RPS (on the theory that ICW was the named third-party beneficiary of the subcontract between Insurance Ventures and RPS) for failing to supply accurate accounts and failing to remit premiums received from the homeowners and held in trust on behalf of ICW. *Id.* ¶¶ 33-91 (totaling $1.1 million).

At the time Plaintiff ICW filed this lawsuit, it also submitted its claims against Insurance Ventures to arbitration. *Id.* ¶ 22-30 & Ex. A. The Arbitrator's decision describes two homeowners policies issued to ICW's clients' Victor Baez and Osmar Rodriguez. *Id.* ¶ 27. The homes of both Baez and Rodriguez were destroyed in the October 2003 wildfires in San Diego. *Id.* Ex. A at 19. Though ICW paid those two insurance claims (totaling $717,500), the Arbitrator found that Insurance Ventures was responsible for those losses. The November 2002 Transition Agreement required Insurance Ventures <u>not</u> to renew these policies, but Insurance Ventures negligently renewed them, thus they were effective when fires destroyed the homes. *Id.* Ex. A at 19, 26. ICW's FAC also seeks to recover those damages from RPS.

*Id.* ¶¶ 57-59, 76-80.

In its Fourth Amended Cross-Complaint ("FACC"), RPS has sued four entities connected to the Baez and Rodriguez homeowner's policies and seeks equitable indemnity and contribution for any damages that RPS may owe Plaintiff ICW. RPS has added a new cause of action for Negligent Misrepresentation. FACC ¶¶ 53-60. RPS's allegations regarding the Baez policy are against Cross Defendant Securian. Securian has answered the FACC and filed a summary judgment motion, which has been submitted on the briefs and will be resolved by separate Order.

As to the Rodriguez homeowner's insurance policy, RPS has named Cross-Defendants Ocwen, Sterling, and WaMu. FACC ¶¶ 22-52, 61-67. RPS alleges that Rodriguez purchased his insurance policy from Cross Defendant WaMu. FACC ¶ 27. WaMu acquired the one-year policy from Plaintiff ICW's Explorer Program and it became effective on October 17, 2002. *Id.* RPS alleges that Cross Defendant Ocwen was the loan servicer for the mortgage company that funded Rodriguez's home loan. *Id.* ¶ 4. Ocwen, in turn, hired Cross Defendant Sterling to collect the premium payments from Rodriguez. *Id.* ¶ 5.

RPS alleges that on October 11, 2002, Sterling issued a $531 check to ICW (through its third party administrator RPS, which was formerly known as EIA) for the full amount of Rodriguez's one year policy, but that check did not identify the correct policy number. *Id.* ¶ 28 & Ex. A. The $531 were applied to a different account, and as a result, EIA began to bill Rodriguez directly in four quarterly installments. *Id.* The first installment was due October 17, 2002, but no payment was received and a notice of cancellation for non-payment was sent with an effective cancellation date of October 27, 2002. *Id.* ¶ 29. On November 1, 2002, Rodriguez paid the first installment, and because it was within five days of the cancellation, the policy was reinstated. *Id.* Rodriguez timely paid the second installment, but failed to make the July 4, 2003 payment. "A notice of cancellation was sent July 7, 2003, with an effective cancellation date of July 22, 2003. However, Mr. Rodriguez failed to make the last payment. As no further payment was received, the policy was cancelled." *Id.* ¶ 30.

The mistake – that Rodriguez's full payment had been applied to the wrong account –

1 was discovered on October 2, 2003.  "[T]he payment was ultimately applied, and the policy
2 reinstated effective July 22, 2003."  *Id.* ¶ 31.  RPS alleges that "given the timing of the
3 discovery of the misapplied funds and the reinstatement . . . there was insufficient time to issue
4 a 45-day non-renewal notice," in accordance with ICW's instructions not to renew the
5 Explorer Program's policies, before the home burned on October 27, 2003.  RPS alleges that
6 the negligence of Cross Defendants Ocwen, Sterling, and WaMu entitles it to indemnity or
7 contribution for the losses alleged by ICW in this action.

8 Cross Defendants move to dismiss on the ground that they did not owe a duty of care
9 to RPS.[1]

## Discussion

A  Standard of Review

"Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  The pleading must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69 & n.8, 1974 (2007).

"All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  *Cahill*, 80 F.3d at 338.  The Court is not obligated to accept every conclusory allegation as true; rather, it "will examine whether conclusory allegations follow from the description of facts as alleged."  *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted).  In addition, the Court  need not accept conclusions of law.  *Benson v. Arizona State Bd. of Dental Examiners*, 673 F.2d 272, 275-76 (9th Cir. 1982).

The Court is limited to the facts alleged in the pleadings, but may consider authenticated documents attached to or incorporated by reference in the pleadings.  *United States v. Ritchie*,

---

[1]On October 2, 2007, the Court granted similar motions attacking the Third Amended Cross Complaint. [# 119 & 120]  The Court allowed RPS to file a Fourth Amended Cross Complaint to attempt to cure the deficiencies in the causation and duty elements, though it appeared unlikely from the legal authorities.  Though WaMu had answered the prior pleadings, it has moved to dismiss the Fourth Amended Cross Complaint. Fed. R. Civ. 15.

1  342 F.3d 903, 907-08 (9th Cir. 2003); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896
2  F.2d 1542, 1555 n.19 (9th Cir. 1990).  The Court may not consider evidence outside the
3  pleadings, such as deposition testimony that contradicts the allegations in the pleadings.
4  *Ritchie*, 342 F.3d at 908-09.   For this reason, the Court has not considered the Declaration by
5  Gary Ottoson [# 128-3] and the Court sustains RPS's objection to that evidence.  [# 150-2]
6  B. Duty

7        To state a claim for equitable indemnity, "'there must be some basis for tort liability
8  against the proposed indemnitor,' usually involving breach of a duty owed to the underlying
9  plaintiff."  *Stonegate Homeowners Ass'n v. Staben*, 144 Cal. App. 4th 740, 751 (2006)
10  (quoting *BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc.*, 119 Cal. App.
11  4th 848, 852 (2004)); *see generally* 5 Witkin, Summary of California Law, Torts § 6, pp. 48-50
12  (10th ed. 2005) (A tort involves a violation of a legal duty imposed by statute, contracts, or
13  otherwise, owed by the party sued to the injured party.) & § 115, pp. 212-13.  Similarly, the
14  right of contribution depends upon joint liability for the same harm.  5 Witkin, *supra*, Torts §§
15  103-08 (citing Cal. Code Civ. P. § 875(a), (c)).  Whether a duty of care is owed is a legal
16  question for the Court.  *Bily v. Arthur Young & Co.*, 3 Cal.4th 370, 397 (1992); *see Ileto v.*
17  *Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003).

18        In its Fourth Amended Cross Complaint, RPS alleges conclusions of law that the Cross
19  Defendants owed RPS a duty of care regarding the payment of insurance premiums.  The Court
20  does not accept conclusions of law, and the law does not support RPS's assertions that these
21  Cross Defendants owed a duty of care to RPS.  *Benson*, 673 F.2d at 275-76; *McGlinchy v.*
22  *Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988) (conclusory allegations in pleading are
23  insufficient to defeat motion).

24        Specifically, RPS states that WaMu "acted for Insurance Co. of the West and/or Osmar
25  Rodriguez, as their agents, relating to the placement of homeowners insurance."  FACC ¶ 3.
26  RPS further alleges that "[i]n connection with the financing of Mr. Rodriguez's home, Mr.
27  Rodriguez's lender and/or his lender's mortgage servicer/provider assumed the duty of care
28  to ensure that Mr. Rodriguez's insurance premiums were paid."  *Id.* ¶ 27.

As to Ocwen, the loan servicing company, RPS alleges "Ocwen, at all times, acted as the agent on behalf of Mr. Rodriguez through its connection and relationship with Mr. Rodriguez's lender and based upon information and belief, assumed both the duty and responsibility to ensure that Mr. Rodriguez's insurance premiums were timely paid." FACC ¶ 4. Similarly, RPS alleges on information and belief that "Sterling was an insurance agency/brokerage which was hired by Ocwen to handle the payment of Ocwen's borrowers' insurance policies and thus, acted as Ocwen/Mr. Rodriguez's agent for purposes of paying the insurance premiums." *Id.* ¶ 5. RPS alleges that "Ocwen and ZC Sterling, as the payors on the check, further breached their duty of care to [Plaintiff] ICW/Explorer and ultimately EIA [Defendant RPS's predeccessor], as the payee" by putting the wrong account number on the October 2002 premium check. *Id.* ¶ 34, ¶ 36 ("Ocwen and ZC Sterling assumed a duty of care to ensure that the information on the check" was accurate).

These conclusory allegations of law are contradicted by governing principles of law. First, as the Cross Defendants point out in their motions, RPS has not cited any legal authority for the proposition that the insured owes a duty of care to the insurance company (or his lender) to pay premiums. A failure to pay a premium in a timely or accurate manner may breach the contract (or lead to cancellation), but it does not give the insurance company a tort claim against the homeowner. Ocwen, and its subcontractor, Sterling, owed duties to Rodriguez, not RPS (or its related entity EIA). Similarly, the entity that placed the insurance policy, WaMu, does not owe a duty of care to a stranger, RPS. The contractual obligations that WaMu, Ocwen, and Sterling may have owed Rodriguez do not create a duty of care toward RPS (or EIA).[2] RPS was not in privity of contract with any of these three Cross Defendants.

Second, RPS's allegations contradict well-established principles of agency law. An agent is liable in tort for economic losses only to the principal, not to third persons who are strangers to the agreement. *Bily*, 3 Cal.4th at 397-405 (auditor is liable only to his client for negligent preparation of financial statements, not to third parties who relied on report to

---

[2] Nor did the Cross Defendants voluntarily undertake to perform a service for Rodriguez; thus, the Good Samaritan doctrine does not apply.

1  purchase shares of stock in the company); *Sanchez v. Lindsey Morden Claims Servs., Inc.*, 72
2  Cal. App. 4th 249, 253-56 (1999) (adjuster hired by insurance company has duty to his client,
3  but not to the insured for economic loss) (collecting cases); *accord Quelimane Co. v. Stewart*
4  *Title Guaranty Co.*, 19 Cal.4th 26, 58-60 (1998) ("we decline to recognize a duty to avoid
5  business decisions that may affect the financial interests of third parties, or to use due care in
6  deciding whether to enter into contractual relations with another" when public suffered
7  economic loss after title company denied insurance); *Goodman v. Kennedy*, 18 Cal.3d 335
8  (1976) (attorney owes duty to client for negligent advice, but not a duty to ensure financial
9  success of third parties). Here, WaMu, Ocwen, and Sterling were not parties to RPS's contract
10 with Insurance Ventures for the benefit of Plaintiff ICW. Even if WaMu, Ocwen, and Sterling
11 were agents of Rodriguez, any alleged breach of duty to him does not render them liable for
12 RPS's economic losses. Under the *Bily* and *Sanchez* line of cases, RPS cannot state a claim
13 for tort relief against WaMu, Ocwen, and Sterling on the facts involved in this action.

14 C. <u>Causation</u>

15      RPS must plead and prove causation to prevail on its claims. *See Yamaha Motor Corp.*
16 *v. Paseman*, 219 Cal.App.3d 958 (1990). The causation allegations in the Fourth Amended
17 Cross-Complaint are tenuous in light of RPS's contractual duty to Plaintiff ICW as of April
18 2003 (as stated in the November 2002 Transition Agreement, FAC ¶¶ 6-7 and FACC ¶ 26-27)
19 not to renew policies in the California Explorer program, including Rodriguez's home and fire
20 insurance policy when his one-year policy expired on October 16, 2003.

21 D. <u>Negligent Misrepresentation</u>

22      RPS added a new cause of action in its Fourth Amended Cross Complaint for negligent
23 misrepresentation. Cross Defendants correctly note that this the Court's Order dismissing the
24 Third Amended Cross Complaint with leave to amend did not authorize RPS to allege new
25 legal theories, but only to address the deficiencies in the duty and causation elements of the
26 claims pleaded. *See supra* note 1. Because the unauthorized amendment came on the eve of
27 the January pretrial dates, the Court will not permit this late amendment. *Zivkovic v. So. Cal.*
28 *Edison Co.*, 302 F.3d 1080, 1087-88 (9th Cir. 2002); *McGlinchy*, 845 F.2d at 809.

### E. Dismissal with Prejudice

RPS has had several attempts to state a claim against these Cross Defendants, but there are no facts to suggest a legal duty by these strangers to RPS' contractual relationship with Insurance Ventures and Plaintiff ICW. The Court finds that any amendment would be futile and enters the dismissal with prejudice.

### Conclusion

In light of the above, the Court GRANTS the motions to dismiss by Cross Defendants ZC Sterling Insurance Agency, Inc., Ocwen Loan Servicing LLC, and Washington Mutual Insurance Services. The dismissal is with prejudice and the Clerk shall terminate these three parties.

In light of this Order, the Court denies as moot the summary judgment motion filed by Cross Defendant Ocwen Loan Servicing LLC. [# 152]

**IT IS SO ORDERED**.

DATED: December 18, 2007

_____
HON. DANA M. SABRAW
United States District Judge